IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD JONES, B13486, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ANTHONY WILLIS, | ) |
| JOHN DOE GARCIA, | )   Case No. 23-cv-2804-DWD |
| MR. RAMSEY, | ) |
| BENT, | ) |
| JULICH/JURLICH, | ) |
| MR. MALDONADO, | ) |
| SARA QUICK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court on Plaintiff's Third Motion for a Preliminary Injunction or Emergency Relief (Doc. 106). The Court previously found that Plaintiff did not have a need for emergency medical care of any sort, and that his mental health needs were being adequately addressed by the facility. (Doc. 74). Despite those findings, out of an abundance of caution, the Court directed the Defendants to provide periodic updates on Plaintiff's access to care every 60 days. (Doc. 74). Two updates indicate ongoing care. (Docs. 80, 110). Against this backdrop, the Court considered Plaintiff's latest Motion (Doc. 106) and finds it appropriate to deny the motion in full.

### PROCEDURAL HISTORY

This lawsuit concerns a variety of issues that Plaintiff alleges he has encountered at Menard, with particular focus on late July of 2023 and August of 2023. Plaintiff has

been allowed to proceed in this case on claims related to allegations of excessive force, his conditions of confinement, and his need for medical and mental health care. (Doc. 9). Plaintiff's original Motion for a Preliminary Injunction concerned many topics beyond the scope of the operative claims in this lawsuit, but the Court narrowed the scope and considered Plaintiff's medical and mental health care, the plumbing in his cell, and his access to the grievance procedure. (Doc. 9 at 19). After the first hearing on the preliminary injunction, the Court credited testimony by a Menard plumber, and a Menard grievance officer, and it further limited the scope of the pending injunction to the sole issues of Plaintiff's need for and access to medical and mental health care. (Doc. 43 at 5). Specific to these issues, Defendants were directed to conduct medical and mental health assessments within 30 days, and to tender those medical records (as well as any other relevant records from Plaintiff's time at Menard or other prisons). (Doc. 43 at 3). A more thorough discussion of the Court's findings about Plaintiff's conditions, his access to grievances and his medical and mental health care can be located in the Court's prior orders. (Docs. 43, 74).

### PLAINTIFF'S NEW MOTION (DOC. 106)

In Plaintiff's new motion, he again addresses many issues outside the scope of the original issues considered. The original issues were access to plumbing, access to the grievance process, and access to medical/mental health care. Plaintiff now raises an emergent need for dental health care (Doc. 106 at 1-2), problems accessing the grievance process (*Id.* at 5-6), problems accessing mental health care, problems with the administration of a medication prescribed or recommended by a hospital for

hernia/chronic pain, problems with general conditions of confinement (access to laundry, yard, showers, family mail, clothing, etc.), and more. As for mental health care, Plaintiff claims the master treatment plan created and previously presented to the Court is a "ruse" with no chance of helping him or stabilizing his mental health. Defendants pretend to schedule him for group sessions without having any intention of offering the sessions. And, staff have lied about his desire to attend sessions or have falsified his refusal of treatment.

He also claims as to grievances that he has filed many under emergency status, but staff have intentionally failed to return them with adequate time for him to file appeals to Springfield. (Doc. 106 at 5-6). The Court notes that contrary to this assertion, or at least contrary to the notion that Plaintiff cannot access grievances, he attached two recent June and July 2024 grievances to his proposed amended complaint that both reflected that they were denied emergency status, but that also then contained counselor responses provided within just a matter of weeks. (Doc. 102-1 at 62-67).

## ANALYSIS

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. *See Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer

irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays*, 974 F.3d at 818. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

As the Court found in relation to Plaintiff's earlier emergency motions, he has at least some likelihood of success on his claims related to events at Menard in July and August of 2023. The Court must then ask if any sort of injunctive relief is crucial to preserve the status quo during this litigation. On the present Motion (Doc. 106), the answer is a definitive no. As to the many issues raised in the Motion (Doc. 106) that are not related to the underlying allegations in this case, the Court will not grant injunctive relief that is not related to the underlying claims because that does nothing to preserve

the status quo. Any relief sought through a preliminary injunction must relate to the underlying claims in the cause of action. *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). Where the requested injunction relates to matters "lying wholly outside the issues in the suit," an injunction is beyond the power of the Court. *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund*, 527 U.S. 308, 326 (1999) (*quoting De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945)). Thus, allegations about topics like dental care, numerous conditions of confinement, chronic pain, and other miscellaneous allegations from the Motion (Doc. 106) do not warrant any present relief because these topics are not related to the previously designated claims. (Doc. 76).

As for Plaintiff's allegations about access to the grievance process, the Court previously found Defendants' evidence on this issue to be credible and to support the notion that Plaintiff was able to adequately access the grievance process. (Doc. 43). Plaintiff's latest evidence in support of his proposed amended complaint firmly supports the finding that he is able to access the grievance process. (Doc. 102-1 at 62-67).

Finally, as for Plaintiff's allegations about his access to mental health care, the Court is satisfied from the ongoing status reports (Docs. 80, 110) that Plaintiff is receiving ongoing opportunities for care. In March of 2024, Plaintiff was to have a psychiatry appointment, which he terminated because he did not want to engage with the provider. (Doc. 80 at 18-22). He was rescheduled with a new provider, and was seen in April of 2024. The provider again discussed medication options with him, and reinforced that

they could not provide certain medications he was demanding, but Plaintiff again refused the offerings. (Doc. 80 at 29-30). It was recorded that Plaintiff refused visits on June 7, 2024 The Court is satisfied that the standing directive for Defendants to tender updates every 60-days is a sufficient mechanism to monitor Plaintiff's situation, and properly leaves the issue of Plaintiff's mental health needs to the experts who offer mental health services.

In sum, Plaintiff's Motion for Emergency Injunction Relief (Doc. 106) is will be denied in full.

## DISPOSITION

Plaintiff's Motion for Emergency Injunction (Doc. 106) is **DENIED**. As explained in the prior Order (Doc. 74), the Warden shall continue to **provide a status report to the Court every 60 days for the pendency of this litigation** on Plaintiff's mental health encounters and plans for future treatment. The Warden may move to be relieved of this obligation if Plaintiff is non-compliant with providers or opts to discontinue participation in mental health services.

**IT IS SO ORDERED.**

**Dated**: August 21, 2024

_____
DAVID W. DUGAN
United States District Judge