IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD JONES, B13486, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-2804-DWD |
| | ) |
| ANTHONY WILLS, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Gerald Jones, brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Menard Correctional Center (Menard). In short, Plaintiff alleges he was assaulted upon arrival to Menard in late July 2023, and he almost immediately engaged in acts of self-harm but was unable to secure needed medical or mental health treatment.  The Defendants have filed motions for summary judgment on the issue of exhaustion of administrative remedies (Docs. 107, 111), Plaintiff has responded (Doc. 121), and one group of defendants has replied (Doc. 123).  The parties directly dispute the availability of the grievance process prior to Plaintiff's initiation of this litigation, and the Court finds it necessary to hold an evidentiary hearing to resolve this issue.

## BACKGROUND

This matter began as two separate lawsuits—one about the alleged assault and self-harm behavior, as well as Plaintiff's immediate conditions of confinement (23-cv-

2804), and one about the alleged mental health treatment issues (23-cv-2889). In both cases, Plaintiff received authorization to proceed without prepayment of the filing fee, despite his status as an inmate who has accrued three strikes under 28 U.S.C. § 1915(g), because the Court found he credibly alleged imminent danger at the initiation of the suits. The Court ultimately consolidated the two cases (Doc. 55), and after consolidation Plaintiff managed to identify eight "Jane Doe" defendants who he alleges denied him adequate mental health treatment. The operative claims are:

**Claim 1:** Eighth Amendment excessive force claim against Defendant Ramsey for allegedly beating Plaintiff upon his arrival to Menard on July 29, 2023;

**Claim 2:** Eighth Amendment excessive force or deliberate indifference claim against Defendant Kulich for observing Plaintiff bleeding from self-harm and choosing to first mace him instead of rendering immediate assistance;

**Claim 3:** Eighth Amendment deliberate indifference against Defendant Quick for refusing medical or mental health assistance on August 3, 2023;

**Claim 4:** Eighth Amendment cruel and unusual punishment or conditions of confinement claim against Defendant Maldonado for shutting Plaintiff's water off frequently to cause him distress;

**Claim 5:** Eighth Amendment cruel and unusual punishment claim against Defendants Garcia and Bent for verbally threatening Plaintiff;

**Claim 6:** Eighth Amendment deliberate indifference claim against Warden Wills for ignoring Plaintiff's correspondence about his situation, and failing to render aid;

**Claim 8:** Eighth Amendment claim against Defendants Overmann, Wilkes, Buettner, Phillips, Carich, Winger, Salger, and Franklin for their deliberate indifference to Jones's serious mental illness and related mental health needs from July 29, 2023, through August 21, 2023.

      **Claim 9:**      **Illinois state law claim against Defendants Overmann, Wilkes, Buettner, Phillips, Carich, Winger, Salger, and Franklin for their intentional infliction of emotional distress on Jones from July 29, 2023, through August 21, 2023.**

(Doc. 76). Other claims and parties were dismissed, and Plaintiff's attempt to later amend the claims and parties was rejected for a variety of reasons. (Doc. 112).

The mental health employees subject to claims 8 and 9 filed one motion for summary judgment (Docs. 107, 108), and the Menard prison staff filed a second motion (Doc. 111). Plaintiff filed a joint response to both motions. (Doc. 121). The parties agree that there are no officially documented grievances that Plaintiff filed prior to initiating this lawsuit.

## FINDINGS OF FACT

The parties agree that Plaintiff arrived at Menard on July 30, 2023. Plaintiff's complaint in case 23-cv-2804 was filed on August 15, 2023, and his complaint in 23-cv-2889 was filed on August 21, 2023.

Plaintiff contends in his sworn response to summary judgment that he attempted to transmit emergency grievances to Warden Wills and the governor of Illinois on August 8, 2023, and August 11, 2023, respectively. (Doc. 121 at 4, ¶ 6). He also claims that prior to filing grievances at Menard on September 6, 2023, he was not afforded access to any grievance forms, and he was only able to file the September grievances by receiving forms from a fellow inmate. (Doc. 121 at 4, ¶ 6).

The Defendants identified grievances filed in September of 2023 as the first grievances Plaintiff filed at Menard after arriving in late-July. (Doc. 108-2 at 78-81).

Defendants also included Plaintiff's cumulative counseling summary, which does not indicate any grievances filed around August 8, 2023. (Doc. 111-2 at 1). However, a note from September 6, 2023, indicate that when seen on tour Plaintiff asked the counselor about a grievance form and the counselor reported that he told Plaintiff he "hadn't heard about any grievance he has sent." (Doc. 111-2 at 1). The counseling log from September 19, 2023, indicated receipt of two grievances that Plaintiff marked as emergencies, but that the Warden deemed as non-emergencies. (*Id.*).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at

1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Per the grievance procedure, "the grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of individuals are not known, the offender must include as much descriptive information about the individual as possible. *Id.*

Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. The Grievance Officer shall whenever reasonably feasible, report findings and recommendations to the CAO within two months after receipt of the grievance. 20 ILL. ADMIN. CODE 504.830(e). If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). An inmate may also submit a grievance as an emergency to the CAO if there is a substantial risk of imminent persona injury or other serious irreparable harm. 20 ILL. ADMIN CODE §

504.840(a). The CAO may either deem the grievance an emergency, or the CAO may deem it a non-emergency and return it to the offender for processing via the normal channels. *Id.*

### B. Analysis

Plaintiff has insisted both in his signed complaint, and in his response to summary judgment, that he attempted to immediately secure grievance forms to file grievances about the claims presented in this lawsuit, but he was denied access to grievance forms. He contends that despite the lack of forms, he attempted to submit emergency grievances directly to the Warden and the Governor of Illinois on August 8, 2023, and August 11, 2023. He got no response to these efforts and was not otherwise able to secure a proper grievance form until he got a few from a fellow inmate the first week of September 2023.

Although the Defendants submitted records which demonstrate that Plaintiff had access to the grievance process in close proximity to the events in question (filing grievances right before his transfer to Menard, and again by mid-September 2023 at Menard), this alone is not enough. The Seventh Circuit has suggested that it is possible there could be a situation where an inmate has an issue so urgent, or the facility lacks a sufficiently expedited grievance process, such that the imminent danger to the inmate allows for the filing of a lawsuit without the full use of the grievance process. In *Fletcher v. Menard Corr. Ctr.*, an inmate with three strikes brought a lawsuit alleging he was subject to excessive force during a cell-transfer causing serious injuries to his neck and limbs, and after the move he was denied diabetes and asthma treatment. The *Fletcher* Court explained,

> Even so, if there are no administrative remedies, then of course there's nothing to exhaust. And we think it's also true that there is no duty to exhaust, in a situation of imminent danger, if there are no administrative remedies for warding off such a danger. Although there is no "futility" exception to a prisoner's duty to exhaust, *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir.2002), futility is not the same as unavailability. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir.1999). If a prisoner has been placed in imminent danger of serious physical injury by an act that violates his constitutional rights, administrative remedies that offer no possible relief in time to prevent the imminent danger from becoming an actual harm can't be thought available. *See Thornton v. Snyder*, 428 F.3d 690, 695–96 (7th Cir.2005); *Dixon v. Page*, supra, 291 F.3d at 491; *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C.Cir.2008); *Beharry v. Ashcroft*, 329 F.3d 51, 58 (2d Cir.2003). Suppose the prison requires that its officials be allowed two weeks to respond to any prisoner grievance and that before the two weeks are up there can be no action taken to resolve it. An administrative remedy could not be thought available to a prisoner whose grievance was that he had been told that members of the Aryan Brotherhood were planning to kill him within the next 24 hours and the guards were refusing to take the threat seriously. *Cf. Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir.1998) (per curiam).

*Fletcher*, 623 F.3d 1171, 1173 (7th Cir. 2010). In *Fletcher*, the inmate admitted that IDOC had an emergency grievance process, and that he attempted to utilize it by filing a grievance the day of the assault. The inmate then waited just two days for a response before initiating the lawsuit, which he conceded was not such a long wait for a response that it caused an imminent danger. Thus, the Court concluded that Fletcher had an emergency process available to address his situation and he failed to allow sufficient time for that process to work.

Ostensibly, Plaintiff's situation is quite similar to *Fletcher*. The prison had an emergency grievance procedure which allowed the forwarding of a grievance directly to the warden. He claims he attempted to use this route, to no avail. He also claims he was denied access to the proper forms needed to file a grievance. These assertions must be

read against the backdrop of the lawsuit, wherein Plaintiff alleged at the time of filing he had injuries from an assault and from self-harming behavior, he was in dire need of mental health treatment, and he alleged other instances of mistreatment and deplorable conditions.  In this context, if Plaintiff can credibly establish that he was truly denied access to grievance forms and/or he submitted an emergency grievance to the Warden on August 8, 2023, then it is possible he has satisfied the exhaustion requirement. Ultimately, this issue will require live testimony and will likely turn on witness credibility.

## MOTION FOR COUNSEL

Plaintiff filed a Motion for Recruitment of Counsel wherein he argued at length that he needs counsel due to his mental state, and the issues he has faced at the prison related to this case.  (Doc. 100).  He contends he has just some grade school education, and significant mental health issues.  He desires counsel to help investigate issues and to file an amended pleading.  He also uses his failure to substitute an individual for Defendant Garcia (who was not sufficiently identified for service of process) as an example of why he needs counsel, claiming he forgot or failed to understand that he had not taken the necessary steps to substitute a properly named defendant so that service of process could be completed.  Plaintiff also submitted a random collection of his mental health records in support of the motion.

Civil litigants do not have a constitutional or statutory right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Under 28 U.S.C. § 1915(e)(1), however, this Court has discretion to recruit counsel to

represent indigents in appropriate cases. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In evaluating whether counsel should be appointed, this Court must examine what are known as the *Pruitt* factors and apply them to the specific circumstances of this case. *Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010). The Court must ask: "'(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Id.* at 761, *quoting Pruitt*, 503 F.3d at 654.

      Here, Plaintiff claims he has made efforts to recruit his own counsel, though he has not supplied proof. Regardless of his efforts, the Court finds that counsel is not necessary at this juncture. Right now, the case is limited solely to the exhaustion of administrative remedies, and any upcoming hearing on exhaustion will be narrowly limited to that issue and will focus on Plaintiff's personal account of what transpired with the grievance process. The Court also notes that Plaintiff has been quite successful on his own behalf in pursuing this matter, managing to file two comprehensive complaints that were both sufficient to demonstrate imminent danger for purposes of 28 U.S.C. § 1915(g). Plaintiff additionally managed to file and pursue multiple preliminary injunctions, and to identify eight Doe defendants. He also filed a coherent response to the Defendants' motions for summary judgment. Against this backdrop, it cannot be said that he is currently unable to adequately represent his own interests. Therefore, his Motion for Counsel (Doc. 100) is DENIED at this time without prejudice.

**MOTION FOR ADEQUATE RELIEF**

Plaintiff's motion for adequate relief discusses a variety of issues that he has experienced with prison mail, both incoming and outgoing. Although labeled as a generic motion, Plaintiff seeks injunctive relief in the form of some sort of court order guiding the transmission of incoming and outgoing legal mail, disciplining staff responsible for hindering mail, and preserving camera footage from a recent mail exchange on July 12, 2024. There are no claims in this case that relate to legal mail or Plaintiff's ability to access the Courts. Therefore, any injunctive relief on this topic would be inappropriate. Plaintiff's Motion (Doc. 103) is **DENIED**.

**DISPOSITION**

Defendants' Motions for Summary Judgment on the issue of exhaustion (Docs. 107, 111) are **DENIED**. **Defendants must file a notice within twenty one days (21) of this Order either withdrawing the affirmative defense of exhaustion or asking for a *Pavey* hearing.** If Defendants do not request a hearing, this matter will proceed to merits discovery.

Plaintiff's Motion for Counsel (Doc. 100) is **DENIED** without prejudice, and his Motion for Adequate Relief (Doc. 103) is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 20, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

## NOTICE TO PLAINTIFF

This Order is an initial decision that you have presented enough evidence to refute the defendant(s) arguments about the exhaustion of administrative remedies for your claims in this lawsuit. The defendant(s) now have the choice to withdraw their exhaustion argument, or to ask for a hearing to give more evidence about this issue. If the defendants withdraw the defense, you will get a scheduling order for next steps on the merits of your claims. If the defendants ask for a hearing, you will get an order that will explain next steps to prepare for the hearing. Any hearing will be limited strictly to the 'dispute(s) of material fact' specifically identified in this Order. You will not need to present evidence on anything other than what is specifically identified. If a hearing is scheduled, you will be allowed to present evidence and testimony on your own behalf. Details about a future hearing will be provided by future order if one is scheduled. You do not need to do anything now. The Defendants have 21 days to file a motion about what they want to do. You will get a copy of that motion, and you will get further instructions once the Defendants have filed their motion. Please be aware that there can be delays in the mailing of copies, so you should wait at least 30 days before asking for the status of this matter.