IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD JONES, B13486, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 23-cv-2804-DWD |
| vs. | ) |
| | ) |
| ANTHONY WILLS, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

On April 24, 2025, the Court found that Plaintiff Gerald Jones had failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) and it granted summary judgment in favor of the Defendants. (Docs. 158, 159). Plaintiff has now moved for reconsideration of that Order (Doc. 160), some Defendants have responded (Doc. 162), and Plaintiff has sought the undersigned's recusal and has moved for a status update (Docs. 161, 163). For reasons explained herein, the Court will deny Plaintiff's motion to reconsider and his motion for recusal/disqualification.

The Federal Rules of Civil Procedure do not expressly recognize motions to reconsider. Rule 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of the judgment." "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or of fact." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (*citing Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir.

2000)). Under Rule 59(e), "[a] 'manifest error' is not demonstrated by the disappointment of the losing party;" it "is the 'wholesale disregard, misapplication or failure to recognize controlling precedent.'" *Bilek v. Am. Home Mortg. Servicing*, No. 07 C 4147, 2010 WL 3306912 at *1 (N.D. Ill. Aug. 19, 2010) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1986)).

Rule 60(b) is available where a movant files within a "reasonable about of time" after final order and judgment. Rule 60(b) "provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1231 (7th Cir. 1983) (internal quotations and citation omitted). Rule 60(b) allows a party to seek relief from an "order" for any of six enumerated reasons, including mistake, inadvertence, newly discovered evidence, fraud, or any other reason that justifies relief. FED. R. CIV. PROC. 60(b). Rule 60(b) does not allow a party to make "general pleas for relief." *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992). It is not for the Court to "agoniz[e] over whether a motion asserts a ground for relief included in Rule 60(b); it is the movant's task to make its contentions clear." *Id.* at 302.

Plaintiff filed his Motion to Reconsider (Doc. 72) within 28 days of judgment, so his Motion could be considered under Rules 59 or 60. Regardless of which Rule the Court applies, Plaintiff has not established a legal or factual error sufficient to warrant the relief he seeks. Plaintiff alleges three sorts of errors with the Court's ruling. First, he complains

that the Court improperly credited the testimony of counselor Sara Quick and prevented him from calling other witnesses that would have presented more relevant information. Second, Plaintiff argues the grievance process was actually unavailable because it cannot be used to contest the treatment decisions of mental health staff. Third, Plaintiff argues that evidence presented earlier in the case about his medical and mental health treatment was falsified and should have formed a basis for sanctions.

As for Plaintiff's contentions about Quick, he has not established a factual or legal error. He incorrectly states in his Motion that Quick testified it was not her duty or responsibility to provide grievance forms, by Quick actually testified that she willingly provided grievance forms for inmates who asked during her counseling rounds. She explained that when she did her rounds in the cellhouse, if an inmate asked for a grievance form, she would either immediately ensure an inmate worker delivered one in her presence or she would send one via institutional mail. In either instance, she would note the request and her response in her counseling notes. Quick was Plaintiff's counselor during the period relevant to if he filed a grievance in this case, and she testified that she made no notes during this time that Plaintiff asked her for any grievance forms, but if she would have been asked, she would have supplied the forms. The Court remains convinced that Quick's testimony was credible and that it was sufficient to demonstrate the grievance process was available to Plaintiff in so much as he could have secured grievance forms prior to the filing of this lawsuit.

Plaintiff also complains that he should have been allowed to call witnesses other than Quick, but he failed to provide the Court with a suggested scope of their testimony

as he was directed to provide (Doc. 149), and based on their job descriptions alone it was not apparent they could provide any more relevant testimony than Quick. He wished to call Warden Wills, Assistant Warden Reichert, Grievance Officer Sara McClare, and counselor Jeffrey Olson. It is not apparent how either warden would have had a role in distributing grievances at his cellhouse. Plaintiff never indicated he had direct contact with McClare about a desire for grievances, and in the Court's experience reviewing the issue of exhaustion in many inmate cases, the grievance officers do not conduct cellhouse rounds. The counselors are the individuals who work the cellhouse each day, which is why Quick's testimony was so probative. Olson's testimony was less relevant that Quick's because he was not the counselor during the time period of interest (July 30, 2023-August 21, 2023), so it is not apparent how Olson's testimony would have been better or more illuminating that Quick's to the specific issue at hand. As such, the Court finds no fault in relation to Plaintiff's first reason for reconsideration concerning Quick's testimony or witness availability.

Second, Plaintiff argues the grievance process was unavailable because at higher echelons of grievance review administrators simply defer to the expertise of treatment providers. The Court interprets this line of argumentation to be consistent with the "dead end" theory of unavailability that has been discussed a few times in recent years. The Court indicated in the April 24, 2025, ruling that this sort of unavailability was not an obstacle in this instance because Plaintiff did not file a grievance at all before lodging this suit. Even digging deeper on the issue of availability viewed through the "dead end" lens, the Court still finds no error warranting reconsideration.

In *Ross v. Blake*, 578 U.S. 632, 642 (2016), the Supreme Court indicated that an inmate must use a grievance process that is capable of use to obtain some relief for the action complained of. The *Ross* Court indicated that there are three sorts of unavailability: (1) a process may be unavailable if it is so opaque that it becomes incapable of use; (2) a process may be unavailable if administrators thwart an inmate from using it via machination, misrepresentation, or intimidation; or, (3) the process may be unavailable if it operates as a "dead end" with officers unable or consistently unwilling to provide any relief for aggrieved inmates. 578 U.S. 643-44. In *Wallace v. Baldwin,* the Seventh Circuit considered the dead end theory for the first time, indicating that it is a very narrow exception and that showing a dead end is a "tall task." 55 F.4th 535, 542-43. The *Wallace* Court theorized that dead end unavailability may be demonstrated by evidence that the inmate suing previously filed grievances on the same issue with no response, or by showing that other inmates previously filed grievances on the issue with no response. *Id.* at 543. The *Wallace* Court specifically indicated that on remand the District Court should consider the plaintiffs' evidence that other inmates had submitted grievances on double-celling with no response, and the allegation that prison administrators may reject the grievances without a consideration of their merits.

In the present case, Plaintiff argued in response to summary judgment that his own past grievances demonstrate the grievance process is unavailable because prison administrators claim they are unqualified to afford relief. (Doc. 121 at p. 8 ¶ 15). He further argued that the process is unavailable specifically as to the mental health

defendants (Overmann, Wilkes, Buettner, Phillips, Carich, Winger, Salger, Franklin, and Wexford) because the grievance officers indicate that medical and mental health decisions are outside of their authority. (Doc. 121 at pp. 5-6 ¶ 6). In support of his position, Plaintiff cited his own "Exhibit A," a single grievance from February of 2023 concerning mental health services at Pontiac Correctional Center. (Doc. 121 at 17-19).

In the grievance, Plaintiff complained he had not been seen by psychiatric staff or mental health staff for over a year, and he alleged that said staff were conspiring to prevent him from being seen. (Doc. 121 at 19). In response, the counselor indicated that they investigated with the mental health department and learned Plaintiff was not on the psychiatric caseload, but that if he wanted that sort of attention he could consult his primary therapist about it. (Doc. 121 at 18). The grievance officer also contacted the mental health professional for Plaintiff's cellhouse and learned he was not on the mental health caseload, but that he could request an appointment at any time. (Doc. 121 at 18). The grievance officer noted that the grievance office does not evaluate clinical decisions but indicated mental health services were available and could be requested at any time. It was recommended that the grievance be denied as moot given the information from the mental health department. (Doc. 121 at 18). The Administrative Review Board concurred with the outcome indicating it was appropriately addressed by the facility, and that it would not dispute the opinion of mental health staff. (Doc. 121 at 17).

The grievance that Plaintiff points to as evidence of an alleged dead end, does not demonstrate a grievance process that provided no response or no recourse. Although Plaintiff fixates on the statements by the grievance officer and Administrative Review

Board that they are not qualified to dispute the opinions of mental health staff, the grievance substantively does not even provide an opportunity for them to evaluate or refuse to evaluate professional medical opinions of the mental health staff because the grievance itself reveals that there was no treatment at all to be reviewed.  Plaintiff grieved that he had not been seen in over a year, and staff responded that he was not currently being seen because he was not on the psychiatric or mental health caseload.  Rather than further refuse assistance, Plaintiff was instructed by the counselor and grievance officer about the steps he could take to get back on the mental health caseload or to see the psychiatrist.  Contextually, this outcome is very different than a process that offers no response or is unwilling to help.

As the Court previously stated, there is also no indication on the facts of Plaintiff's present case that he experienced a dead end.  He simply submitted grievances too late after he had already commenced this lawsuit.  Just months after commencing the lawsuit, one of the grievances already had garnered a response from the grievance officer and Warden, indicating that mental health did a wellness check and also confirmed Plaintiff was scheduled for group therapy and weekly mental health rounds.  (Doc. 121 at 12-13).  The grievance was ultimately deemed "resolved" because mental health reported that a crisis watch was not needed and that Plaintiff had regular mental health contacts.  Nowhere in the response did the grievance officer indicate that they lacked authority to review the situation.  Thus, on the information available, even if theoretically in the past Plaintiff has been told that staff defer to medical expertise, that is not the response he got

in this case.  In sum, Plaintiff does not have adequate evidence to satisfy the "tall task" of demonstrating that the grievance process was a dead end for his situation.

Third, and finally, Plaintiff argues that the Court was incorrect to accept certain medical and mental health records early in the case as genuine, when he claims they were falsified.  This argument is misplaced because this dispute goes to earlier rulings on Plaintiff's requests for preliminary injunctive relief, rulings that had nothing to do with the exhaustion issues in this case.  Therefore, this does not provide a basis to unsettle the Court's April 24, 2025, ruling granting summary judgment on the issue of exhaustion.

Next, the Court considers Plaintiff's 21-page motion for recusal and disqualification. (Doc. 161).  Because Plaintiff is proceeding pro se, the Court construes his motion for recusal as being brought pursuant to 28 U.S.C. § 455.  *See Cohee v. McDade*, 472 F. Supp. 2d 1082, 1083–84 (S.D. Ill. 2006) (citation omitted) (reasoning that the disqualification of federal judges is governed by 28 U.S.C. § 455 and 28 U.S.C. § 144, with the latter being unavailable to pro se litigants in light of the statutory requirement of a good faith certificate from "counsel of record").  Pursuant to § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The statute also provides a number of circumstances in which a judge shall disqualify themself, for example, where he or she is related to a party, has a financial interest in the outcome, has a personal bias or prejudice concerning a party, or has personal knowledge regarding evidentiary facts concerning the proceedings.  (*Id.*). Opinions held by judges about things that they learned in earlier litigation with the parties are not evidence of bias.  *See, e.g., Liteky v. United States*, 510 U.S. 540, 551 (1994)

("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings."); *In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005) ("There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties."); *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004) ("The factual allegations must fairly support the charge of bias or impartiality and must be specific.").

Plaintiff's 21-page motion attacks every ruling made throughout the course of this case, alleging that the undersigned acted in conspiracy with the Defendants to fabricate or falsify evidence and to deprive Plaintiff of adequate mental health and medical care. Plaintiff relies entirely on adverse findings made in this litigation to demonstrate bias, but the rulings in this case have been independently founded on evidence and have not been unfairly biased by anything, including the Defendants or counsel. The Court credited Plaintiff at the outset of this case, allowing him to proceed under the imminent danger exception to 28 U.S.C. § 1915(g), designating claims, serving defendants, and directing responses to Plaintiff's allegations seeking emergency injunctive relief. To suggest that the Court then engaged in a long course of conspiring with other actors to deprive Plaintiff of his rights is ridiculous and unfounded. Plaintiff has not demonstrated the existence of any of the statutory factors for disqualification. Thus, Plaintiff has failed to establish a basis for recusal, and the motion will be denied.

In sum, Plaintiff's Motion for a Status Update (Doc. 163) is **GRANTED** by the issuance of this Order, but his Motion for Reconsideration (Doc. 160) and his Motion for

Recusal/Disqualification (Doc. 161) are **DENIED** because he has not demonstrated that any form of relief is warranted on either motion.

**IT IS SO ORDERED.**

**Dated**: December 22, 2025

                                                  DAVID W. DUGAN
                                                  United States District Judge